**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SELVER H.,[1] | ) |
| | )    **No. 24 CV 761** |
|        **Plaintiff,** | ) |
| | ) |
|    **v.** | )    **Magistrate Judge Young B. Kim** |
| | ) |
| **FRANK BISIGNANO, Commissioner** | ) |
| **of Social Security,** | ) |
| | )    **July 29, 2026** |
|        **Defendant.** | ) |

**MEMORANDUM OPINION and ORDER**

Selver H., a survivor of the 1994 Sarajevo market bombing, seeks disability insurance benefits ("DIB") asserting that he is disabled by physical and mental ailments, some of which he attributes to the bombing. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security partially denying his application for benefits. For the following reasons, Selver's remand request is denied:

**Procedural History**

Selver filed a DIB application in August 2021 claiming disability onset on March 8, 2021. (Administrative Record ("A.R.") 17.) Selver's claim was denied initially and upon reconsideration at the administrative level. (Id.) He then sought and was granted a hearing before an Administrative Law Judge ("ALJ") at which he and a vocational expert ("VE") testified. (Id. at 44-79, 126-27.) The ALJ determined

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Selver's first name and last initial in this opinion to protect his privacy to the extent possible.

in May 2023 that Selver is disabled, but only as of August 1, 2022. (Id. at 17-36.) The Appeals Council denied Selver's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Selver then filed this action for judicial review, and the parties consented to this court's jurisdiction. 28 U.S.C. § 636(c); (R. 6).

## Analysis

Selver argues that the ALJ erred when: (1) setting his onset date as August 1, 2022; (2) evaluating his treating podiatrist's opinions; and (3) assessing his subjective symptoms. (See generally R. 12, Pl.'s Mem.) The court disagrees that the ALJ erred.

### A.      Onset Date

The court turns first to Selver's complaints about the August 1, 2022 onset date because the issues raised overlap with his other claims of error. The date a claimant is disabled is "the earliest date that the claimant meets both the definition of disability and the non-medical requirements during the period covered by his or her application." SSR 18-1p, No. SSA-2017-0047, 2018 WL 4945639, at *2 (Oct. 2, 2018). When assessing the disability onset date, the ALJ reviews the relevant evidence and considers factors such as:

> the nature and extent of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings.

*Id.* at *6.

2

Selver says the ALJ erred when finding his bilateral foot arthritis neither disabling nor severe until August 2022 because if the ALJ had "complied with SSR 18-1p" and "set forth a logical bridge from the evidence to his conclusion pertaining to the onset date for bilateral foot arthritis, [he] could have been found disabled as of March 8, 2021" as alleged. (R. 17, Pl.'s Reply at 1; see also R. 12, Pl.'s Mem. at 4-7.) It is undisputed that Selver suffered significant foot injuries in the 1994 bombing and subsequently underwent several surgeries. (See A.R. 26-27, 56, 63, 353, 355.) The record also bears out—as the ALJ acknowledges—that Selver has structural abnormalities as a result and was diagnosed with bilateral foot arthritis before August 2022. (Id. at 21, 26-27.) But any error in characterizing Selver's foot conditions as "non-severe" before August 2022 is harmless because the ALJ found other severe impairments and considered the aggregate effect of all impairments when formulating his residual functional capacity ("RFC"), *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012), in addition to meeting the obligations under SSR 18-1p.

To be sure, the ALJ found that before August 2022 Selver suffered from severe right shoulder osteoarthritis and PTSD, yet was capable of performing light work with occasional "pushing, pulling and overhead reaching" with his right upper extremity, frequent "balanc[ing], stoop[ing], crouch[ing] and crawl[ing]," sufficient "concentrati[on] . . . to carry out simple tasks," and "occasional interaction with others." (A.R. 25.) The ALJ then found that as of August 1, 2022, Selver also suffered from severe bilateral foot arthritis, resulting in a reduction of his RFC to sedentary work, and concluded he was disabled as of that date. (Id. at 32.)

3

For support the ALJ pointed out that pre-August 2022 imaging reflect abnormal "underlying structural pathophysiology" as a result of the injuries Selver sustained in 1994 and clinical examinations note an "inability to plantar flex on right foot against resistance, as well as deep tendon reflexes and muscle power reduced to 3/5." (Id. at 21, 27.) But the ALJ also noted that Selver's coordination and gait were normal, his providers documented "benign" foot and non-focal neurological findings, an AFO brace prescribed in April 2021 for Selver's right ankle rendered him pain-free, and ankle replacement was neither recommended nor indicated. (Id. at 21, 27-28.) The ALJ correctly noted that Selver's foot and ankle troubles worsened on and after August 1, 2022, as reflected in both his reports to providers and medical imaging, ultimately leading to foot surgery in November 2022. (Id. at 32-34 (citing, e.g., id. at 901, 903, 908-09, 915, 975, 980).) Substantial evidence supports the ALJ's determined onset date for disability. Selver asks the court to reach a different result, but he fails to identify any evidence the ALJ did not consider, and this court cannot reweigh the evidence. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).

## B.  Symptom Assessment

Selver also complains about the ALJ's symptom assessment. An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects,

daily activities, treatment received, and precipitating pain factors, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). That said, the court will not overturn a symptom evaluation that is logically grounded in specific findings and evidence—as the ALJ's is here. *See Murphy*, 759 F.3d at 815.

Selver says the ALJ discounted his subjective symptom allegations because objective evidence did not support them and suggests the ALJ failed to consider other factors. (R. 12, Pl.'s Mem. at 11-12.) But the ALJ's reasoning was not so limited. Rather, in finding a "reasonable question" as to Selver's claimed disability before August 2022 the ALJ focused on the "overwhelming" discrepancy between Selver's hearing testimony about "persistent and disabling severe pain" and the "underlying medical record" reflecting that his pain symptoms were "well managed." (A.R. 27.) The ALJ discussed ample evidence in support of this conclusion. (Id. at 26-30.) Selver accuses the ALJ of cherry-picking a single treatment note from May 2021 to support his conclusion, (R. 16, Pl.'s Reply at 4 (citing A.R. 21)), but when asserting that his pain grew worse, Selver points only to treatment notes from before May 2021, some of which are duplicates, (id. (citing A.R. 333, 337, 340, 343, 347, 351, 373, 382, 468, 534, 610, 615, 640, 774, 935, 940, 965 (July 2020 through April 2021 treatment notes))).

Selver next complains in conclusory fashion that the ALJ "selectively" cited a lack of distress and overt pain at exams while acknowledging that pain may fluctuate. (R. 12, Pl.'s Mem. at 13-14 (citing A.R. 27 (noting providers "routinely" described Selver as "in no acute distress" and did not observe "overt pain behavior").) But these

statements are not contradictory, and the court declines to fault the ALJ for pointing out what Selver fails to refute with contrary evidence. *See Anthony G. v. Saul*, No. 17 CV 4393, 2020 WL 439964, at *9 (N.D. Ill. Jan. 28, 2020) (holding ALJ properly discounted allegations of elevated pain in part because treatment records repeatedly noted that claimant was "in no acute distress").

The ALJ also considered Selver's relatively conservative treatment from his alleged onset date of March 8, 2021, through July 31, 2022. (A.R. 27-29.) Selver says that in so doing the ALJ ignored doctors' advice not to undergo surgery because of comorbidities. (R. 12, Pl.'s Mem. at 9 & 13; R. 17, Pl.'s Reply at 9-10 & 12.) It is true that an ALJ generally "must consider possible reasons for a failure to seek treatment" before holding the same against a claimant. *Deborah M.*, 994 F.3d at 790; *see also Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (holding that ALJ erred in rendering adverse credibility decision based on the claimant's refusal to undergo surgery "without inquiring into . . . reasons for doing so"). But to support his claim that other health conditions prevented surgery, Selver cites only to his and his lawyer's hearing testimony, the January 23, 2022 opinion of Selver's podiatrist, Dr. Gregory Amarantos—which the ALJ properly found unpersuasive, as described below—and a single treatment note from Dr. Amarantos indicating that since Selver "has been wearing [his AFO on his right foot] he is not having pain" and "at this time [ankle replacement surgery] is not indicated." (R. 12, Pl.'s Mem. at 13 (citing A.R. 61-62, 78, 333 & 596).) This evidence does not sufficiently support Selver's claims, and as such, there was no error here.

6

Finally, Selver complains that the ALJ held his daily activities against him without explaining how they are inconsistent with his symptom allegations or noting the adaptations he undertook to perform them, citing a July 2022 function report in which he said he wears a shoulder support and a foot brace, uses his left hand to dress and bathe, limits his shopping and cooks twice a week for only 10 minutes "due to leg pain," sometimes cannot carry a milk carton, and cleans for an hour or two. (See R. 12, Pl.'s Mem. at 12-13 (citing A.R. 274-280 (July 2022 function report)); R. 17, Pl.'s Reply at 11.) The government responds that the ALJ considered Selver's daily activities primarily when assessing the paragraph B criteria, citing his ability to cook, clean, and shop as evidence of his ability to adapt and manage himself, among other things. (R. 16, Govt.'s Mem. at 12 (citing A.R. 23-24 (referencing Selver's daily activities in finding him no more than mild to moderately limited in each of the four paragraph B criteria)).) Moreover, the ALJ considered Selver's daily activities when setting his physical RFC and noted that Selver's engagement in those activities was inconsistent with his allegations of "constant and severe" pain and "extreme functional physical limitations." (A.R. 29.)

Such analysis is required under controlling regulations, and the ALJ properly considered Selver's "descriptions of daily-living activities" here. *Crowell v. Kijakazi*, 72 F.4th 810, 818 (7th Cir. 2023) (internal citations and quotations omitted); s*ee also Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) (holding that the "use of daily-living activities, to assess credibility and symptoms, [i]s not improper"). Although daily-living activities generally must be considered "with care," *Roddy v. Astrue*, 705 F.3d

631, 639 (7th Cir. 2013), because a claimant's "ability to struggle through" them "does not mean that she can manage the requirements of a modern workplace," *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011), the ALJ in no way equated Selver's activities with an ability to work full time, *Jeske*, 955 F.3d at 592 (holding that "ALJ may not equate daily activities of living with those of a full-time job"). Regardless, the ALJ relied on more than just Selver's daily activities to support his symptom assessment and, thus, the evaluation stands even if the ALJ overemphasized those activities. Indeed, the ALJ expressly stated that his RFC assessment was "supported by the medical findings, nature and frequency of treatment, the claimant's activities, opinion evidence and other factors." (See A.R. 32; *see also Halsell v. Astrue*, 357 Fed. Appx. 717, 722-23 (7th Cir. 2009) (holding that "[n]ot all of the ALJ's reasons [for discounting a claimant's symptom allegations] must be valid as long as *enough* of them are" (emphasis in original)); *see also Dawson v. Colvin*, No. 11 CV 6671, 2014 WL 1392974, at *10 (N.D. Ill. April 10, 2014) (holding that ALJ's symptom assessment "need not be perfect; it just can't be patently wrong"). Accordingly, remand is not proper on this ground.

## C.    Opinion Evidence

The ALJ's evaluation of treating podiatrist Dr. Amarantos's opinions for the period between March 8, 2021, the claimed onset date, and August 1, 2022, also withstands scrutiny. An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must assess the persuasiveness of all medical opinions by

considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to assess how the opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how he considered the source's specializations and relationship with the claimant and any other factors tending to support or contradict their opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

Dr. Amarantos opined on January 23, 2022, that Selver: (1) is unable to perform "sustained lifting, carrying, pushing or pulling items over 10 lbs on a frequent or sustained basis"; (2) cannot walk, stand, bend, or lift for more than 2 hours per day; (3) cannot engage in "normal ambulation"; and (4) would have "difficulty" staying "on task" full-time and keeping pace. (A.R. 596.) The ALJ deemed this opinion unpersuasive. (A.R. 31.) Selver argues that the ALJ improperly assessed the supportability factor, emphasizing Dr. Amarantos's normal findings on examination while ignoring the abnormal ones. (R. 12, Pl.'s Mem. at 8; R. 17, Pl.'s Reply at 8-9.) But Selver's complaint is more about weight than neglect, as the ALJ noted virtually every abnormality Selver mentions. (See A.R. 21, 26-28.) And while the ALJ did not specifically discuss Dr. Amarantos's December 2020 treatment note reflecting Selver's reports of difficulty walking and right foot pain for 27 years, the

9

ALJ noted Selver's right foot pain generally and pointed to his report that an AFO brace prescribed in April 2021 largely resolved it. (Id. at 21.) In any event, Dr. Amarantos stopped treating Selver after resolving his right foot issues—a full eight months before rendering the opinion at issue. (See generally id. at 333-56 (Dr. Amarantos's treatment notes from December 2020 through May 2021).) Further, the government is correct that Dr. Amarantos never documented a gait abnormality on exam. (See generally id.) In sum, the ALJ satisfied his duty to explain the supportability factor, which remains only minimal, *see Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025) (noting that the ALJ is "subject 'to only the most minimal of articulation requirements'" in assessing the supportability and consistency factors (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024))), by placing more weight on regular and pervasive benign findings—at least before August 2022—than other evidence, (A.R. 31). *See also Deborah M.*, 994 F.3d at 788 (stating that the court will not reweigh evidence).

Selver also claims that the ALJ did not consider the extent to which Dr. Amarantos's opinions were consistent with those of other doctors and with relevant imaging from before August 2022. (R. 12, Pl.'s Mem. at 9-10.) But he does not point to any opinions that would further his cause, (id.), nor could the court discern any. Although Selver cites treatment notes from other providers documenting arthritis, joint pain, diabetes, foot deformities, pain, and other issues related to his feet, (id. at 10), the ALJ considered these conditions and related symptoms, and many such records post-date the ALJ's established onset date in any

case, (see, e.g., A.R. 901, 903-05, 908-11, 913, 915, 919, 921, 978, 980). Finally, to the extent imaging from before August 2022 reflects abnormalities, the ALJ considered that imaging and noted the abnormalities and determined that Selver was not disabled during that period. (Id. at 27, 29-30.) As such, Selver's complaint once again amounts to an invitation to reweigh the evidence, which this court cannot do.

### Conclusion

For the foregoing reasons, Selver's remand request is denied, and the Commissioner's final decision is affirmed.

ENTER:

Young B. Kim
United States Magistrate Judge

11